UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

DEAN LOPEZ,

                    Petitioner,

       - against -

                                              08 Civ. 3495 (JGK)

WILLIAM BROWN, SUPERINTENDENT, AUBURN
CORRECTIONAL FACILITY,                        MEMORANDUM OPINION AND
                                              ORDER

             and

ANDREW M. CUOMO, ATTORNEY GENERAL OF
NEW YORK STATE,

                    Respondents.

─────────────────────────────────────────────


JOHN G. KOELTL, District Judge:

       The petitioner, Dean Lopez, brings this petition for habeas

corpus under 28 U.S.C. § 2254 seeking to vacate his conviction

on a single count of burglary in the second degree following a

jury trial in state court.  He alleges as the basis for his

petition the ineffective assistance of trial counsel.


                              I

       The record reflects the following relevant facts.  On

December 18, 2002 at around 11 p.m., Peter McCormick returned

home to his apartment located on the Upper East Side of

Manhattan to discover that his laptop computer, sports watch,

and some rolled change were missing.  He also found that a

statuette and a decorative artillery shell casing that he had placed on the windowsill by the fire escape had been moved, and that there were new markings on his front door.  (Trial Transcript ("Tr.") 31-35.)  Mr. McCormick then called the police.  After the police responded and learned that the shell casing had been moved, they dusted the casing for fingerprints. The police found and preserved two fingerprints on the shell casing.  (Tr. 54-57.)  After analysis, the police determined that the two fingerprints recovered from the casing positively matched the petitioner's fingerprints.  (Tr. 96.)  On January 22, 2003, after the positive fingerprint match, the police arrested the petitioner in connection with the burglary of Mr. McCormick's apartment.  (Tr. 119.)

The petitioner was charged with Burglary in the Second Degree under N.Y. Penal Law § 140.25(2), which provides that a person is guilty of Burglary in the Second Degree when the person "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" and the building is a dwelling.  Harry Hertzberg, Esq. represented the petitioner at trial.  In his opening statement, Mr. Hertzberg argued that the petitioner could not have entered the apartment through either the door or the fire escape window because the door was still locked when Mr. McCormick returned home and there was a "grating" on the fire escape window that prevented entry.  (Tr.

16-17.)  Mr. Hertzberg further suggested in his opening that the petitioner's fingerprints were on the shell casing because the petitioner was on the fire escape and "may have reached in and touched the shell casing." (Tr. 19.)  In his summation, Mr. Hertzberg attacked the credibility of Mr. McCormick as a witness and questioned why the police did not dust for fingerprints on the front door or in the kitchen, where Mr. McCormick had kept the missing rolled change and sports watch. (Tr. 136-37.)  At trial, contrary to Mr. Hertzberg's suggestion that there was a "grating" on the fire escape window, Mr. McCormick testified that there were in fact no security bars on his window. (Tr. 26-27, 30-31.)  This was confirmed by photographs of the apartment windows depicting fire escape metal work outside the window but no bars on the window itself. (Tr. 29; Appendix to Petitioner's Brief ("Pet'r App.") 17.)  The prosecution relied primarily on the two fingerprints on the shell casing that positively matched the petitioner's fingerprints (Tr. 11-13) and Mr. McCormick's testimony establishing that the shell casing had not been out of his possession since 1990 (Tr. 37-38), that he last cleaned it in about 1995 (Tr. 37), and that he had never seen the petitioner before trial (Tr. 41).

The jury returned a guilty verdict, and the petitioner was sentenced to a prison term of 16 years to life as a persistent violent felony offender.  The petitioner filed a direct appeal

3

through new counsel.  The New York State Supreme Court,
Appellate Division, First Department affirmed the petitioner's
conviction.  See People v. Lopez, 812 N.Y.S. 2d 99 (App. Div.
2006).  The court rejected a claim that trial counsel was
ineffective for failing to request a circumstantial evidence
charge.  The court also noted that the defendant's remaining
ineffective assistance of counsel claims, including challenges
to trial counsel's preparation and strategy, were not reviewable
on direct appeal and would require a further record to be
developed.  The court then explained: "On the existing record,
to the extent it permits review, we find that defendant has
failed to demonstrate he did not receive effective assistance of
counsel under the state and federal standards . . . . [T]he
evidence of defendant's guilt was overwhelming, and '[c]ounsel
may not be expected to create a defense when it does not
exist.'"  Id. (internal citations omitted).  The petitioner's
application for leave to appeal to the New York State Court of
Appeals was denied.  See People v. Lopez, 853 N.E.2d 255 (N.Y.
2006).

     The petitioner then moved before the trial court to vacate
the judgment of conviction under New York Criminal Procedure Law
§ 440.10(1)(h), asserting that he had been denied effective
assistance of counsel at trial.  The petitioner's motion was
denied without a hearing.  (Pet'r App. 35.)  The trial court

noted that "trial counsel's choice was among strategies that were very unlikely to succeed." The trial court reiterated that "counsel may not be expected to create a defense when it does not exist." The court rejected the defendant's argument that trial counsel should have suggested that the defendant might have touched the shell casing at some unspecified time in the past. The court found the argument unlikely to be convincing. The court also noted that trial counsel for the defendant told the defendant's new attorney that the defendant had said that there were bars on the window and there was no denial by the defendant. The court also found that defense counsel could reasonably have chosen not to argue the issue of intent in his summation. (Pet'r App. 38-39.) The petitioner's application for leave to appeal the Order to the Appellate Division was denied. (Pet'r App. 40.) The petitioner subsequently filed this motion asserting that he had been denied the effective assistance of counsel at trial.

The petitioner argues that Mr. Hertzberg's performance at trial was ineffective because he failed to investigate the crime scene, causing him to misstate the facts at trial and adopt a flawed trial strategy; he failed to argue that the petitioner lacked the intent to commit a crime; he failed to request a jury instruction on circumstantial evidence when the evidence was

purely circumstantial; and he failed to object to testimony establishing that the petitioner was unemployed.

II

A

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Knowles v. Mirzayance, 129 S. Ct. 1411, 1414-15 (2009); Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); Walker v. Girdich, 410 F.3d 120, 122 (2d Cir. 2005).

A state court decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result.

Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision involves "an unreasonable application of ... clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular state prisoner's case."  Id. at 407-08.

To meet that standard, "the state court decision [must] be more than incorrect or erroneous"; it "must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  "[I]t is well established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief."  Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted); see also Dedushaj v. Graham, No. 07 Civ. 5401, 2008 WL 4858242, at *2-3 (S.D.N.Y. Nov. 7, 2008).


B

Claims of ineffective assistance of counsel are evaluated under the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on these claims, the petitioner must show both (1) that his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that counsel's

7

deficient performance was prejudicial to the petitioner's case. See id. at 687-88; Gersken v. Sankowski, 426 F.3d 588, 607 (2d Cir. 2005).  Self-serving conclusory allegations to this effect are insufficient to establish ineffective assistance of counsel. United States v. Torres, 129 F.3d 710, 715-17 (2d Cir. 1997); United States v. Gonzalez, 970 F.2d 1095, 1099-1101 (2d Cir. 1992).

The petitioner cannot meet the first prong of the Strickland test merely by showing that his counsel employed poor strategy or made a wrong decision. Instead, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment."  LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (quoting Strickland, 466 U.S. at 687); see also Hernandez v. United States, 280 F.Supp.2d 118, 122 (S.D.N.Y. 2003).  There is a "strong presumption" that the defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1985) (citing Strickland, 466 U.S. at 688-89).

To satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see Gersten, 426 F.3d at 607; Dedushaj, 2008 WL 4858242, at *2-3.  See also Knowles, 129 S. Ct. at 1419 (holding that relief may not be granted pursuant to § 2254(d)(1) based on argument that counsel was constitutionally ineffective merely for failing to pursue claim where there was "nothing to lose" by doing so).


                              III

     The petitioner argues that the state court's finding that Mr. Hertzberg's performance at trial was not ineffective was contrary to, or an unreasonable application of, the Strickland test.  The petitioner asserts that Mr. Hertzberg's representation was ineffective under Strickland because he failed to investigate the crime scene, causing him to misstate the facts in his opening statement and to adopt a flawed trial strategy; he failed to argue that the petitioner lacked the intent to commit a crime; he failed to request a circumstantial evidence charge when the evidence was purely circumstantial; and he failed to object to testimony establishing that the petitioner was unemployed.

The state court's rejection of the petitioner's ineffective assistance of counsel claims was neither contrary to, nor based on an unreasonable application of, federal law.  While Mr. Hertzberg made strategic decisions that are questionable in hindsight, his performance at trial did not rise to the level of objective unreasonableness.  Furthermore, there is no reasonable probability that, but for Mr. Hertzberg's claimed errors, the result of the proceeding would have been different.  Therefore, the state court did not misapply the Strickland standard in denying the petitioner's claim of ineffective assistance of counsel.

A

The petitioner claims that Mr. Hertzberg's performance was unreasonable because he failed to investigate the crime scene before giving his opening statement, causing him to base his defense on an inaccurate belief that there were security bars on the fire escape window that would have prevented entry.  In his opening statement, Mr. Hertzberg suggested that the petitioner reached in and touched the shell casing from the fire escape but could not have entered the apartment or stolen anything because of the security bars on the window.  The petitioner asserts that if Mr. Hertzberg had investigated the crime scene and discovered that there were in fact no security bars on the window, he could

10

have adopted a more effective defense strategy that did not place the petitioner at the crime scene or concede the "entry" element of burglary by suggesting that the petitioner reached his hand into the fire escape window.

Strickland provides that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary....[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  466 U.S. at 691. In assessing the adequacy of the level of investigation, "a court must consider...whether the known evidence would lead a reasonable attorney to investigate further."  Wiggins v. Smith, 539 U.S. 510, 527 (2003).

The petitioner cites a number of prior cases where courts have found that a failure to investigate the facts of the case constituted ineffective assistance of counsel under Strickland. See, e.g., Henry v. Poole, 409 F.3d 48, 65-66 (2d Cir. 2005); Williams v. Washington, 59 F.3d 673, 679 (7th Cir. 1995); Thomas v. Kuhlman, 255 F. Supp.2d 99, 109 (E.D.N.Y. 2003).  However, there are situations where a failure to investigate the facts is not unreasonable.  See Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir. 1983); Rosario v. Bennett, No. 01 Civ. 7142, 2002 WL 31852827, at *33 (S.D.N.Y. Dec. 20, 2002).  In this case, Mr.

Hertzberg's failure to investigate the crime scene caused him to misstate the facts in his opening statement.  This was a serious error, but it does not rise to the level of unreasonableness contemplated by Strickland.  In this case, Mr. Hertzberg had at least some basis for believing, albeit mistakenly, that there were security bars on the window.  In denying the petitioner's § 440.10 motion, the state court found that there were photographs in the record depicting fire escape metal work that "at first glance" appeared to be window security grating.  (Pet'r App. 37).  The state court also found that Mr. Hertzberg had relied on the petitioner's own statements that there were bars on the window in forming his mistaken belief.  (Pet'r App. 38-39.)  The petitioner has not contested that he in fact made those statements.  Based on an affirmation in support of the petitioner's § 440.10 motion, the respondent also claims that Mr. Hertzberg believed that the prosecution had confirmed there were no bars on the window.  (Epstein Aff., Ex. I to Resp't Ans. at 15-16.)

        The petitioner argues that Mr. Hertzberg was not entitled to rely on the petitioner's statements and had the duty to conduct an independent investigation.  However, in some cases, it is reasonable for defense counsel to decide not to conduct independent investigation based on information supplied by the defendant.  See Cepulonis, 699 F.2d at 576-77 (1st Cir. 1983)

(no ineffective assistance where counsel chose not to
investigate an alibi defense based on the information supplied
by the defendant).  But cf. Rompilla v. Beard, 545 U.S. 374, 377
(2005) (defense counsel in a capital case required to make
reasonable investigation of mitigating facts even where
defendant and defendant's family suggest that no mitigating
facts exist). "[A]pplying a heavy measure of deference to
counsel's judgments" regarding the level of necessary
investigation, Strickland, 466 U.S. at 690-91, Mr. Hertzberg's
decision to rely on the petitioner's version of the facts was
not objectively unreasonable in this case.  There were
photographs in the record depicting fire escape metal work that
appeared to be security grating and there was no reason to
question the petitioner's assertion.  In light of the
circumstances, Mr. Hertzberg's decision to rely on the
petitioner's assertion that there were bars on the window was
not unreasonable.

        This case is distinguishable from the cases cited by the
petitioner because those cases involved persistent adherence to
an irrelevant defense strategy, e.g., Henry, 409 F.3d at 64
(counsel continued to rely on alibi for wrong date even after
mistake was revealed at trial); a complete failure to
investigate the facts of the case, e.g., Williams, 59 F.3d at
678 (ineffective assistance of counsel due to counsel's "lack of

familiarity with [the] case" and "his complete failure to investigate the facts"); or a failure to investigate facts that were key to the prosecution's case, e.g., Thomas, 255 F. Supp. 2d at 109 (investigation of the crime scene would have revealed facts that would have allowed counsel to discredit testimony of "overwhelming importance for the prosecution's case" and "eliminated all proof that defendant was seen that evening outside of the victim's window").

This is not a case where defense counsel pursued an irrelevant defense strategy. Rather, Mr. Hertzberg's defense strategy represented an attempt to explain the compelling evidence against the petitioner in a way that did not require a finding of guilt. In this case, if the jury believed that the petitioner had reached into the fire escape window to touch the shell casing but had not removed property from the apartment, it is plausible that the jury could develop a reasonable doubt about whether the petitioner's placing his hand in the window constituted an "entry" with the intent to commit a crime.

This is not a case where the defense attorney failed to investigate the facts of the case. In fact, Mr. Hertzberg conducted a reasonable investigation of the facts, including an investigation of the evidence on which the prosecution chiefly relied. At trial, the prosecution relied on the matching fingerprints recovered from the shell casing and Mr. McCormick's

14

testimony about the burglary.  Mr. Hertzberg retained his own
fingerprint expert to confirm that the fingerprints in fact
matched the petitioner's fingerprints.  (Hinkley Aff., Ex. J to
Resp't Ans. at 2.)  After independently confirming the
fingerprint match, Mr. Hertzberg attempted to minimize the
fingerprint evidence at trial by emphasizing that the only
fingerprints recovered from the apartment were those found on
the shell casing near the window.  Mr. Hertzberg emphasized the
lack of fingerprint evidence from other parts of the apartment.
Mr. Hertzberg also correctly identified inconsistencies in Mr.
McCormick's trial testimony and his grand jury testimony (Tr.
135-36) which allowed him to challenge Mr. McCormick's
credibility at trial.

The petitioner makes a related claim that Mr. Hertzberg, as
a result of his factual mistake, committed to an unreasonable
defense strategy in which he admitted that the petitioner was at
the scene of the crime, conceded that the petitioner entered the
apartment by reaching his hand into the window, and failed to
argue that the petitioner lacked criminal intent.  The
petitioner contends that Mr. Hertzberg's strategy could not
result in a finding of innocence because Mr. Hertzberg's
strategy could not create a reasonable doubt with respect to any
of the elements of burglary.

Considering the "wide latitude" granted to attorneys in determining "tactical decisions" at trial, <u>Strickland</u>, 466 U.S. at 689, it cannot be said that the state court's decision finding no ineffective assistance was objectively unreasonable. It is true that Mr. Hertzberg's suggestion that the petitioner had placed his hand in the apartment window ran the risk that the jury would find that the petitioner had entered the apartment.  However, faced with the fingerprints recovered from the shell casing and Mr. McCormick's testimony that the shell casing had not been out of his apartment since he moved to the apartment, and that he did not know the petitioner, Mr. Hertzberg would have been hard-pressed to formulate a theory that could plausibly explain why the petitioner's fingerprints were on the shell casing without conceding that the petitioner had entered the apartment.

Mr. Hertzberg's decision not to argue directly that the petitioner lacked criminal intent was similarly reasonable.  At trial, Mr. Hertzberg implied that the petitioner lacked the intent to commit a crime in the apartment by arguing that the petitioner did not take property from the apartment.  If the jury believed that the petitioner did not take any property from the apartment, the jury could easily infer that the petitioner lacked criminal intent.  The decision not to focus explicitly on intent was not unreasonable and falls within the wide discretion

16

with respect to trial strategy granted to attorneys under
Strickland.

The petitioner further argues that Mr. Hertzberg's failure
to request a jury instruction on circumstantial evidence in a
case where the only evidence against the petitioner was
circumstantial constitutes ineffective assistance.  However, the
Court of Appeals for the Second Circuit has held that "when a
trial court's instruction is legally correct as given, the
failure to request an additional instruction does not constitute
deficient performance." Aparicio v. Artuz, 269 F.3d 78, 99 (2d
Cir. 2001).  Therefore, Mr. Hertzberg's failure to request a
circumstantial evidence instruction does not constitute
ineffective assistance because the court's charge was otherwise
legally correct.  Indeed, the petitioner makes no argument that
the jury instruction in this case was legally incorrect.

Finally, the petitioner objects to Mr. Hertzberg's failure
to object to testimony that the petitioner was unemployed.  The
arresting officer testified that, in taking the petitioner's
pedigree information at the time of the petitioner's arrest, the
petitioner said he was unemployed.  (Tr. 120.)  The prosecutor
did not rely on that answer in his summation and there was no
effort to impugn the character of the petitioner in summation.
This issue also does not render Mr. Hertzberg's performance
unreasonable.  First, there is no indication that this

specification of alleged ineffective assistance of counsel was ever raised and exhausted before the state court.  In any event, the defense counsel's failure to object to this single question does not rise to the level of ineffective assistance of counsel. The defense counsel could well have chosen not to draw attention to the answer.  The prosecutor did not refer to the answer in his summation.  This case differs from those cited by the petitioner where New York courts have found error where prosecutors have cross examined defendants on collateral matters to impugn their character without being probative of the crime charged, see, e.g., People v. Hicks, 478 N.Y.S.2d 256 (App. Div. 1984), or engaged in such tactics during opening statements or summations.  See, e.g., People v. Wright, 359 N.E.2d 696 (N.Y. 1976); People v. Cruz, 469 N.Y.S.2d 138 (App. Div. 1983).


B

Moreover, the petitioner has failed to establish that Mr. Hertzberg's errors at trial resulted in any prejudice under Strickland.  As the state court found in denying the petitioner's §440.10 motion, the evidence against the petitioner was overwhelming and there is no credible basis to conclude that the alleged errors would probably have changed the outcome at trial.  (Pet'r App. 38.)  The state court's decision was not unreasonable.

     The petitioner argues that Mr. Hertzberg's mistaken belief
that there were security bars on the window caused him to pursue
a flawed strategy at trial.  However, Mr. Hertzberg did
vigorously challenge the prosecution's case by questioning the
fingerprint evidence and attempting to challenge Mr. McCormack's
testimony.  Faced with the fingerprints recovered from the crime
scene that positively matched the petitioner's fingerprints, Mr.
Hertzberg pursued a theory that would explain how the
petitioner's fingerprints might have gotten on the shell casing
that did not compel the conclusion that the petitioner had
committed the burglary.  Mr. Hertzberg chose to argue that the
petitioner reached into the window and touched the shell casing
but did not enter the apartment or remove any property from the
apartment.

     Moreover, the petitioner's speculation about what Mr.
Hertzberg should have done at the trial is, as the state court
found, unconvincing.  The petitioner contends that Mr. Hertzberg
could have argued that the petitioner had touched the shell
casing at a time prior to the burglary.  This theory would have
been highly implausible given Mr. McCormick's testimony
establishing that the shell casing had been in his continuous
possession from 1990 to the date of the burglary and that he had
never seen the petitioner prior to trial.  The petitioner also
contends that Mr. Hertzberg could have argued that the

petitioner had touched the shell casing through the fire escape window but did not have the necessary criminal intent.  While Mr. Hertzberg did not directly argue against the element of intent at trial, Mr. Hertzberg implied that the petitioner lacked criminal intent by arguing that the petitioner had touched the shell casing but had not entered the apartment or stolen anything.  It is unconvincing that a more pronounced focus on the petitioner's lack of criminal intent could have overcome the significant evidence against the petitioner.

The petitioner has also failed to establish prejudice with respect to Mr. Hertzberg's failure to request a circumstantial evidence charge and failure to object to witness testimony showing that the petitioner was unemployed.  Given the strength of the prosecutor's evidence, the petitioner does not credibly demonstrate how a circumstantial evidence charge or an objection to a single answer regarding the petitioner's unemployment would have changed the outcome at trial.

In sum, the petitioner has failed to show that defense counsel's alleged errors, taken as a whole, affected the outcome at trial.  The petitioner has failed to show that the state court's decision rejecting the petitioner's claims of ineffective assistance of counsel was an unreasonable application of federal law.  See also Knowles, 129 S. Ct. at

1422 (finding no prejudice under Strickland because no showing

of prejudice from counsel's performance).

### CONCLUSION

For the reasons explained above, the petitioner's motion

pursuant to 28 U.S.C. § 2254 is **denied**.  The Clerk is directed

to enter judgment dismissing the petition and closing this case.

The Court declines to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c)(2) because the petitioner has

failed to make a substantial showing of the denial of a

constitutional right.

**SO ORDERED.**

**Dated:     New York, New York
           May 27, 2009**

John G. Koeltl
United States District Judge

21